## POWERS *v.* CLARKE.

*(Supreme Court, General Term, First Department. July 9, 1889.)*

GUARANTY—MISTAKE OF FACT.

Plaintiff wrote to defendant, asking if he would guaranty the payment of goods purchased by a third person to the extent of $1,000, to which defendant answered that he did not care to make himself liable for so large an amount; but "I am perfectly willing, however, to guaranty the amount of the bills thus far purchased, which I understand amount to about $600." In point of fact there had been but one purchase made, amounting to over $900, and the goods had not then been delivered. *Held,* that plaintiff was notified that defendant's guaranty was made under a mistake of fact, and no recovery whatever could be had thereon.

Appeal from circuit court, New York county.
Argued before VAN BRUNT, P. J., and CULLEN, J.
*Potter & Potter,* for appellant.    *G. L. Sterling,* for respondent.

VAN BRUNT, P. J. The facts material to the question presented upon this appeal seem to be as follows: On May 14, 1886, the plaintiff resided and carried on business at Springfield, Mass., under the name of the "Powers Paper Company," and had an office in New York, where he did business through his agent, one St. John. Upon the day last named St. John sold to Dikeman & Co., of Brooklyn, 10 cases of Connecticut Valley paper, at $15\frac{1}{2}$ cents a pound. This was one lot of paper, and ordered at one time. The exact amount of the purchase was not then known, and could not be ascertained, except upon weighing the goods, and they were not to be delivered until the defendant's guaranty was received. Immediately after the agreement for the sale Mr. St. John wrote to the defendant as follows: "New York, 5-14, 1886. Mr. H. D. Clarke—Dear Sir: Mess. Dikeman & Co., of Brooklyn, refer to you, and say you will guaranty their bills. Will you kindly give such a guaranty, say for one thousand dollars? It is not likely they will want as much as that, but, in case they do, would like to have it. Kindly return same by bearer, and oblige yours, truly, J. L. St. John, P. P. Co. We are glad to give them long time on purchase, but at close margins we would like your guaranty," —to which the defendant replied as follows: "Office of Dikeman & Co., Commission Agts., 65 Bond Street, Brooklyn. May 14, 1886, 6 P. M. Dear Sir: Your favor of this date just received. While I have no doubt of the integrity and reliability of Messrs. Dikeman & Co., still I do not care to make myself liable for so large an amount as one thousand dollars. I am perfectly willing, however, to guaranty the amount of the bills thus far purchased, which I understand amount to about six hundred dollars. I am, sir, very truly yours, HENRY D. CLARKE, 177 Montague St., Brooklyn. To J. L. St. John, 62 & 64 Duane St., N. Y. City." The goods were subsequently prepared for delivery, and weighed, and the purchase price was ascertained to be $919.15, and the goods delivered. The defendant, having been notified that Dikeman & Co.'s account was unpaid, sent the following telegram: "September 13, 1886. To J. L. St. John, 62 & 64 Duane St., New York. Cannot come over to-day. Your attention is called to the fact that my guaranty only covered bills pur-

chased previous to the date on which it is written, and does not hold me for any purchases after that date; and said guaranty was limited to six hundred dollars. Better see Dikeman & Co. to-day. HENRY D. CLARKE." The plaintiff, having been unable to collect his bill from Dikeman & Co., brought this action to recover from the defendant upon his guaranty the whole amount of said bill and interest, and also the costs and counsel fee incurred in procuring judgment against Dikeman & Co. Upon the trial of this action the court directed a verdict for the sum of $600 and interest, and from the judgment thereupon entered this appeal is taken.

The single question presented is whether, under the foregoing circumstances, the defendant has incurred any liability whatever to the plaintiff. A guaranty, like every other contract, must be construed according to the intention of the parties; and, if the plaintiff had a right to rely upon this guaranty to the extent of $600, the recovery can be sustained. The letter to the defendant from the plaintiff's agent asked for a general guaranty of Dikeman & Co.'s bills to the extent of $1,000. To this the defendant declined to accede, and he gave a limited guaranty, in which he distinctly stated what he understood to be the condition of the purchases which had already been made by Dikeman & Co. After refusing to make himself liable for any future purchases, or for so large an amount as $1,000, he says: "I am perfectly willing, however, to guaranty the amount of the bills thus far purchased, which I understand amount to about six hundred dollars." By this reply the plaintiff was notified that the defendant had been informed that the bills purchased amounted to about $600, and that, such being the case, he was willing to guaranty them. The plaintiff knew before he delivered the goods that the defendant had acted in giving his guaranty upon an erroneous statement of the facts. He knew that the defendant supposed that he was guarantying all the purchases which had then been made, which would amount to about $600. Whether, if the defendant had been aware of the facts that there had been a single purchase, amounting to over $900, he would have been willing to guaranty $600 of it, we do not know. The plaintiff well knew, however, that such was not the guaranty which the defendant intended to give, but that he supposed that he was guarantying all the purchases made at that time, which would not amount to more than about $600, and that there was no intention upon the part of the defendant to guaranty to the extent of $900. The plaintiff, therefore, knew that the defendant had given his guaranty under a misapprehension as to the true condition of affairs, and he had no right to rely upon it in making his future deliveries. Under these circumstances, the plaintiff cannot be said to be a *bona fide* holder of this guaranty. He knew that either by a false representation as to the amount of these purchases, or for some other cause, the defendant had given this guaranty while believing that the whole amount of the bills did not exceed $600, and it may well be that, had the defendant known the true state of the case, he would not have given any guaranty whatever. By the very language of his letter the defendant had protected himself, and distinctly informed the plaintiff under what circumstances he was giving his guaranty. The telegram sent, upon being notified of the claim upon the guaranty, also supports the view above expressed. When notified of Dikeman & Co.'s failure to pay, and that the claim against Dikeman & Co. amounted to over $900, the defendant says: "Your attention is called to the fact that my guaranty only covered bills purchased previous to the date on which it was written, and does not hold me for any purchases after that date; and said guaranty was limited to six hundred dollars." This telegram clearly shows that the defendant supposed that the excess of the claim over $600 arose from purchases subsequent to the guaranty; and well he might, because he had distinctly informed the plaintiff that he had given the guaranty under the belief and representation that the amount of the bills which had then been purchased did not amount to more than about $600, and he had accepted

the guaranty knowing that it had been given under that representation. It seems to us that it is plain that the plaintiff knew when he received this guaranty that it had been procured by a misrepresentation of the facts, and he had no right to rely upon the same. The judgment appealed from should be reversed, and a new trial granted, with costs to the appellant to abide the event.

CULLEN, J., concurs.